No. 03-626C
(Senior Judge Smith)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GULF INSURANCE COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND APPENDIX

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

RONALD G. MORGAN
Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6289

Attorneys for Defendant

June 21,2004

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . iii

INDEX TO DEFENDANT'S APPENDIX . . . . . . . . . . . . . . . . . . vii

DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. The Complaint Fails To State A Claim Upon Which Relief Can Be Granted . . . . . . . . . . 5

II. Plaintiff, As A Matter Of Law, Cannot Recover Under The Doctrine Of Equitable Subrogation . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### CASES

Admiralty Constr., Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . 9

Aetna Cas. & Surety v. United States,
845 F.2d 971 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . 9

Aetna Casualty & Surety Co. v. United States,
228 Ct. C 655 F.2d 1047 (1981) . . . . . . . . . . . . . . . . . 6

American Pacific Roofing Co. v. United States,
21 Cl. Ct. 265, 267 (1990) . . . . . . . . . . . . . . . . . . . 7

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . 16, 17

Argonaut Ins. Co. v. United States,
193 Ct. Cl 434 F.2d 1362 (1970) . . . . . . . . . . . . 10, 15

Balboa Ins. Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) . . . . . . . . . . . . . . . 10

Cedars-Sinai Medical Center,
11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . 7

Celotex Corp. v. Catrett,
477 U.S. 317, 325 (1986)) . . . . . . . . . . . . . . . . . . 17

Department of Energy v. Ohio,
503 U.S. 607 (1992) . . . . . . . . . . . . . . . . . . . . . 6

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . 11, 20

Dynalectron Corp. v. United States,
4 Cl. Ct. 424 aff'd,758 F.2d 665 (Fed. Cir. 1984) . . . . . 5

Eastport Steamship Corp. v. United States,
178 Ct. C 372 F.2d 1002 (1967) . . . . . . . . . . . . . . . . .

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.),
cert. denied, 464 U.S. 826 (1983) . . . . . . . . . . . . . . 6

## TABLE OF AUTHORITIES (Contd.)

**CASES** **PAGES**

Fireman's Fund Ins. Co. v. United States,
909 F.2d 495 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . 9

Fireman's Fund Insurance Company v. England,
313 F.3d 1344 (Fed Cir. 2002) . . . . . . . . . . . . . . . 9,15

Fisher v. United States,
364 F.3d 1372 (Fed Cir. 2004) . . . . . . . . . . . . . . . 5, 16

Globe Indem. Co. v. United States,
84 Ct. Cl. 587, 595 (1937) . . . . . . . . . . . . . . . . . . 18

Golden Pacific Bancorp. v. United States,
15 F.3d 1066 (Fed. Cir. 1994) . . . . . . . . . . . . . . . 17

Heagy v. United States,
12 Cl. Ct. 694 (1987),
aff'd, 848 F.2d 1288 (Fed. Cir. 1988) . . . . . . . . . . . . 5

Henningsen v. United States Fid. & Guar. Co.,
208 U.S. 404 (1908) . . . . . . . . . . . . . . . . . . . 10, 11

Insurance Company of the West v. United States,
243 F.3d 1221, 1367 (Fed. Cir. 2001) . . . . . . . . . . **passim**

Keene Corp. v. United States,
508 U.S. 200 (1993) . . . . . . . . . . . . . . . . . . . . . . 7

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . 6

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . 7

Munsey Trust Co.,
332 U.S. at 241 . . . . . . . . . . . . . . . . . . . . . **passim**

**TABLE OF AUTHORITIES (Contd.)**

**CASES** **PAGES**

National Surety Corp. v. United States,
118 F.3d 1542 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . 9

National Surety Corp. v. United States,
31 Fed. Cl. 565 (1994) . . . . . . . . . . . . . . . . . . . . 17

Newman-Green, Inc. v. Alfonzo-Larrain,
490 U.S. 826 reh'g denied, 429 U.S. 932 (1989) . . . . . . . 7

Pearlman v. Reliance Ins. Co.,
371 U.S. 132 (1962) . . . . . . . . . . . . . . . . . . . 10, 11

Prairie State Bank v. United States,
164 U.S. 227 (1896) . . . . . . . . . . . . . . . . . . . 10, 11

Ransom v. United States,
17 Cl. Ct. 263 (1989),
aff'd, 900 F.2d 242 (Fed. Cir. 1990) . . . . . . . . . . . . 15

Reynolds v. Army and Air Force Exchange Service,
846 F.2d 746, 748 (Fed. Cir. 1988) . . . . . . . . . . . . . . 7

Royal Indem. Co. v. United States,
208 Ct. C 529 F.2d 1312 (1976) . . . . . . . . . . . . . . . 10

Sentry Ins. A Mutual Co. v. United States,
12 Cl. Ct. 320, 322 (1987) . . . . . . . . . . . . . . . . . 19

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84, 89 n.1 (1989) . . . . . . . . . . . . . . 17, 18

Sweats Fashion, Inc. v. Panhill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . 17

Thomas Creek Lumber & Log Co. v. United States,
36 Fed. Cl. 220 (1996) . . . . . . . . . . . . . . . . . . . . 17

United States Fid. & Guar. Co. v. United States,
201 Ct. Cl. 475 F.2d 1377 (1973) . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES (Contd.)**

**CASES** **PAGES**


United States Fid. & Guar. Co. v. United States,
230 Ct. C 676 F.2d 622 (1982) . . . . . . . . . . . . . . . . . 10

United States v. Connolly,
716 F.2d 882 (Fed. Cir. 1983),
cert. denied, 465 U.S. 1065 (1984) . . . . . . . . . . . . . 8

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . 6

United States v. Munsey Trust Co.,
332 U.S. 234 (1947) . . . . . . . . . . . . . . . . . . **passim**

United States v. Nordic Village, Inc.,
503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . 6

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . 6

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . 5, 6

United States v. White Mountain Apache Tribe,
537 U.S. 465 (2003) . . . . . . . . . . . . . . . . . . . 5

United States v. Williams,
514 U.S. 527 (1995) . . . . . . . . . . . . . . . . . . . 6

Westech Corp. v. United States,
20 Cl. Ct. 745 (1990) . . . . . . . . . . . . . . . . . 14

**STATUTES, RULES AND REGULATIONS**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . **passim**

RCFC 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . 1,20

RCFC 12(c) . . . . . . . . . . . . . . . . . . . . . . . . 17

RCFC 56(b) . . . . . . . . . . . . . . . . . . . . . . . 1,20

# INDEX TO APPENDIX


| Item | **Page** |
|---|---|
| Solicitation, Offer and Award of Contract . . . . . . . . . . . . | 1 |
| Memo, dated 10 Sept 99, Reflecting Final Pay . . . . . . . . . . | 3 |
| Gulf Insurance Power of Attorney . . . . . . . . . . . . . . . . . | 5 |
| Performance Bond . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| Payment Bond . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| Notice to Proceed . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| COP, Inc., Letter, dated February 10, 1999 . . . . . . . . . . . | 9 |
| Fowler Memo, dated 23 March, 1999 . . . . . . . . . . . . . . . . | 10 |
| Fowler Memo, dated March 29, 1999 . . . . . . . . . . . . . . . . | 11 |
| Pay Screen . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| Addis, Greenberg Letter, dated October 30, 2001 . . . . . . . . | 14 |
| Pay Screen Showing Final Payment . . . . . . . . . . . . . . . . | 17 |
| Addis, Greenberg Letter, dated September 4, 2002 . . . . . . . | 18 |
| Contracting Officer Letter, dated December 28, 2001 . . . . . . | 23 |
| Letter Declining Reconsideration, dated January 13, 2003 . . | 25 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GULF INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-626C |
| | ) | (Senior Judge Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(6), and 56(b) of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court to dismiss the complaint because it fails to state a claim upon which relief can be granted, given the fact that plaintiff is neither in privity with the Government, nor is the plaintiff equitably subrogated to the rights of a contractor that is in privity. In the alternative, defendant respectfully requests that the Court enter summary judgment in the Government's favor upon the grounds that there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law. In support of this motion, we rely upon the pleadings, the Joint Stipulation of Material Facts, and the following brief and appendix.

DEFENDANT'S BRIEF

Questions Presented

1. Whether the complaint fails to state a claim upon which relief can be granted, because payment by the surety was made only pursuant to the surety's payment bond?

2. Whether plaintiff, as a matter of law, cannot recover under the doctrine of equitable subrogation?

STATEMENT OF FACTS

On February 18, 1998, the United States Army Corp of Engineers, St. Louis District ("COE" or "Government"), entered into Contract No. DACW43-98-C-0407 ("the contract") with Womack Brothers ("Womack") for a construction project designated as the Shower Replacement Building, North Sandusky Access Area, Rend Lake, Big Muddy River, in Franklin County, Illinois (the "project"). JS1; A 1; Compl. ¶4.[1] On March 12, 1998, plaintiff, Gulf Insurance Company ("plaintiff" or "surety"), executed a performance bond in the amount of $180,000 and a payment bond in the amount of $90,000 in connection with and as

---

[1] "A __" refers to the page in "Defendant's Appendix," attached to this "Motion To Dismiss For Failure To State A Claim, Or, In The Alternative, For Summary Judgment."

"JS __" refers to the paragraph of the Joint Stipulations agreed to by the parties for purposes of dispositive motions.

"Compl. ¶ __" refers to the paragraph in plaintiff's complaint filed March 21, 2003.

required by the contract. JS2; A6&7; Compl. ¶5. Notice to proceed on the contract was issued to and acknowledged by Womack on April 1, 1998. JS4; A8.

On February 10, 1999, the Government received a letter from Contract Operations Planning, Inc. ("COP"), indicating that it, COP, represented the surety, and was examining claims under the contract. JS5; A9; Compl. ¶7. In that letter, COP alleged that the surety had received claims from suppliers and subcontractors that Womack was not paying its subcontractors and suppliers. JS5; A9; Compl. ¶7.

On March 23, 1999, the COE Project Engineer, Jay Fowler, wrote a memorandum to the file indicating that the project was substantially complete on March 22, 1999. JS7; A10. On April 13, 1999, contract payment, in the amount of $28,237.50, was made to Womack. JS8; A13. On April 28, 1999, another contract payment, in the amount of $26,188.88, was made to Womack. JS8; A13. Despite receiving these funds, Womack paid neither its subcontractors nor its suppliers. JS14; Compl. ¶8. Because of Womack's failure to pay, the surety, under the terms of its payment bond, was required to pay in excess of $55,000 to the subcontractors and suppliers. JS9; A18; Compl. ¶16.

On September 10, 1999, the invoice for final payment on the contract was received by the COE from Womack, which had completed the project. A3. On February 11, 2000, final payment on the

contract, in the amount of $7,499.00, was paid. A17. All amounts paid by the surety to the subcontractors and suppliers were paid pursuant to the payment bond issued by the surety. JS10; Compl. ¶8.

It appears that the surety took no action directly against Womack to recover the funds paid to Womack in April, 1999, but, instead, on October 30, 2001, submitted a demand letter to the Government seeking $56,927.38 for funds alleged to have been improperly paid to Womack. JS11; A14.

After a series of letters, on or about January 13, 2003, the Government denied the demand for payment of the amounts paid to Womack. JS12; A25. Following that denial, the surety filed suit in this Court on March 21, 2003, claiming that the funds paid to Womack were improperly paid and that the surety was equitably subrogated to the contract rights of Womack. Compl. ¶12.

## ARGUMENT

### I. The Surety, Having Paid Only Under Its Payment Bond, Cannot Maintain An Action Against The Government In This Court To Recover The Amounts It Paid Pursuant To That Bond

Like its predecessors, this is a court of limited jurisdiction. Heagy v. United States, 12 Cl. Ct. 694, 697 (1987), aff'd, 848 F.2d 1288 (Fed. Cir. 1988)(Table); Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984)(Table). Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief.[2] United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941); Insurance

[2] In, United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003), the Supreme Court opined that because the Tucker Act waives sovereign immunity for suits of the type generally encompassed by a claim, jurisdiction exists (at least for purposes of surviving a motion to dismiss for lack of jurisdiction). In Fisher v. United States, 364 F.3d 1372 (Fed Cir. 2004), the Federal Circuit, applying White Mountain, concluded that if upon further development of the case, it appeared that jurisdiction does not exist, "then the case [should be] dismissed for failure to state a claim on which relief can be granted." Fisher, at 1377. Based upon this guidance, the United States maintains that the instant claim fails to state a claim upon which relief can be granted. This conclusion follows from the fact that the surety's complaint, on its face, states a type of claim over which this Court has jurisdiction, which appears to meet the criterion established by White Mountain. Having said that, the Government maintains that jurisdiction is lacking over this particular claim, because the Tucker Act, 28 U.S.C. § 1491, does not waive claims by entities such as the surety under the facts presented here. Therefore, the issue of jurisdiction is inextricably linked to the failure to state a claim, for which reason, it is discussed at the outset of this motion.

Company of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir. 2001).

Congressional consent to suit in this Court, a waiver of the Government's traditional immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. King, 395 U.S. 1 (1969); Fidelity Construction Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399; United States v. King, 395 U.S. at 1; Insurance Company of the West, 243 F.3d at 1372. Accord, Department of Energy v. Ohio, 503 U.S. 607, 614-16 (1992)("[W]e may not enlarge the waiver beyond the purview of the statutory language"). When confronted with a jurisdictional issue, the Court's "task is to discern the 'unequivocally expressed' intent of Congress, construing ambiguities in favor of immunity." United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992). See, generally, United States v. Williams, 514 U.S. 527, 531(1995).

The central provision granting consent to suit in this Court is the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397; Aetna Casualty & Surety Co. v. United States, 228 Ct. Cl. 146, 151, 655 F.2d 1047, 1051 (1981). Under that statute, an action may be maintained in this Court only if it is "founded either

upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."[3] 28 U.S.C. § 1491 (1982). There is no question, but that the Tucker Act contains a waiver of the Government's sovereign immunity to be sued by its contractors or by those who "stand in the shoes" of its contractors. Insurance Company of the West, 243 F.3d at 1375. The question is how far that waiver extends.

Further, it is axiomatic that the Tucker Act does not create any substantive right of recovery against the United States for money damages. Testan, 424 U.S. at 398; Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-07, 372 F.2d 1002, 1007-09 (1967). Rather, it merely confers jurisdiction upon the Court whenever the substantive right exists. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en

---

[3] The existence of jurisdiction is determined at the time the complaint is filed. Keene Corp. v. United States, 508 U.S. 200 (1993); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830, reh'g denied, 429 U.S. 932 (1989)("[t]he existence of federal jurisdiction ordinarily depends upon the facts as they exist when the complaint is filed"). Plaintiff bears the burden of proving the soundness of his allegations of jurisdiction. See, e.g., American Pacific Roofing Co. v. United States, 21 Cl. Ct. 265, 267 (1990)("where the court's jurisdiction is put in question, plaintiff 'bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence'")(quoting Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 748 (Fed. Cir. 1988)). Accord, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Cedars-Sinai Medical Center, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

banc), cert. denied, 465 U.S. 1065 (1984). A claimant, therefore, must look beyond this jurisdictional statute and establish some substantive provision of law, regulation, or the Constitution, which can fairly be construed as mandating compensation, to state a claim within the jurisdiction of this Court. United States v. Connolly, 716 F.2d at 885. Thus, jurisdiction to entertain plaintiff's complaint exists in this Court only if plaintiff can establish that its cause of action lies within the well-established limitations of this Court's jurisdiction.

Clearly there is no privity of contract between the Government and the non-takeover surety who did not pay to complete the project under the terms of its performance bond. As the Court of Appeals for the Federal Circuit recently observed,"[w]e have specified two circumstances in which a surety may succeed to the contractual rights of a contractor against the [G]overnment: when the surety takes over contract performance or when it finances completion of the defaulted contract." Insurance Company of the West, 243 F.3d at 1370 (citing, *inter alia*, Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1222 (Fed. Cir. 1998)). This succession, or assignment of rights by operation of law, Fireman's Fund Insurance Company v. England, 313 F.3d 1344 (Fed Cir. 2002), appears to be the basis upon which the "non-contractual doctrine of equitable subrogation" is

founded.[4] Insurance Company of the West, 243 F.3d at 1221. From this it necessarily follows that, absent take over of the contract or financing completion of the contract via its performance bond, the surety is not equitably subrogated to the rights of the prime contractor and is, instead, left with the rights that a subcontractor may have against the prime contractor.

The gist of the surety's complaint here is that the contract funds should have been paid to it instead of Womack. The surety's substantive claim and assertion of jurisdiction are premised upon the opinions in cases such as Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985); United States Fid. & Guar. Co. v. United States, 230 Ct. Cl. 355, 676 F.2d 622 (1982); Royal Indem. Co. v. United States, 208 Ct. Cl. 809, 529 F.2d 1312 (1976); United States Fid. & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973); and Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), in

---

[4] Clearly the surety is not a third party beneficiary of the Government contracts on which it posts bonds. National Surety Corp. v. United States, 118 F.3d 1542, 1545 (Fed. Cir. 1997) ("The surety's rights and obligations are not based on third-party beneficiary concepts"); Fireman's Fund Ins. Co. v. United States, 909 F.2d 495, 500 (Fed. Cir. 1990) (a surety "is neither the intended third-party, nor the direct, beneficiary" of the bonded contract). Further, the surety is not in privity with the Government merely because of the surety's posting a bond on a Government contract. Admiralty Constr., Inc., 156 F.3d at 1222; Aetna Cas. & Surety v. United States, 845 F.2d 971,975 (Fed. Cir. 1988).

which the Court held that the Government may be liable to a surety for unreasonably making progress payments to a contractor after the surety has given notice that the contractor is in default.

Despite the line of cases identifying the substantive rights of a surety, it was not until the decision in Balboa, supra, that the Federal Circuit addressed the Claims Court's jurisdiction over such claims. In Balboa, the Court relied upon three Supreme Court cases – Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962); Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404 (1908); and Prairie State Bank v. United States, 164 U.S. 227 (1896) – to support its conclusion that the Court possessed jurisdiction over a claim of equitable subrogation.

More recently, in Insurance Company of the West, supra, the United States Court of Appeals for the Federal Circuit concluded that, after the decision in Department of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999),[5] the Court could no longer rely upon

---

[5] In Blue Fox, there was no surety, because no Miller Act bonds were required by the contract. Nevertheless, the subcontractor that brought the suit occupied a position, *vis-a-vis* the Government, that is closely analogous to the surety's position in this case. Blue Fox was a subcontractor, that had not been paid by its prime contractor. The Army, after receiving notice that the subcontractor was not being paid, nevertheless paid the prime contractor. The subcontractor sued the Army in district court seeking an equitable lien, predicating jurisdiction upon the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, and 28 U.S.C. § 1331. The district Court dismissed for lack of jurisdiction, because sovereign immunity had not been (continued...)

those three cases to find a waiver of sovereign immunity for subrogation claims. Insurance Company of the West, 243 F.3d at 1371-72. This conclusion followed from the Supreme Court's opinion that

> None of these cases [Prairie State Bank, Henningsen, and Pearlman] involved a question of sovereign immunity, and, in fact, none involved a subcontractor directly asserting a claim against the Government. Instead, these cases dealt with disputes between private parties over priority to funds which had been transferred out of the Treasury and as to which the Government had disclaimed any ownership.

Blue Fox, 525 U.S. at 265. In view of the private nature of the litigants, the question of waivers of sovereign immunity for such claims was never addressed.[6]

In Insurance Company of the West, the Federal Circuit, defined the waiver of sovereign immunity found in the Tucker Act in so far as it relates to a surety. The scope of that waiver was based upon the conclusion that "a subrogee, **after** stepping into the shoes of a government contractor, may rely on the waiver

[5](...continued) waived. The Ninth Circuit disagreed, finding a sovereign immunity waiver in the APA. The Supreme Court disagreed and reversed the circuit court.

[6] Based upon the opinion in Insurance Company of the West, there may be some question as to whether the funds at stake in Prairie State Bank had in fact been "transferred out of the Treasury." Insurance Company of the West, 243 F.3d at 1372 n.2. This possible factual issue, however, did not affect the Federal Circuit's conclusion that "the Supreme Court did not directly address the sovereign immunity issue in Prairie State Bank." Id.

of sovereign immunity in the Tucker Act and bring suit against the United States." 243 F.3d at 1375 (emphasis added). The Court also stated that the subrogee, as an assignee by operation of law, has "the **same** right[s]" as the Government contractor, "with its advantages and disadvantages." Id., at 1374 (emphasis added). Given the requirement that the surety "step into the shoes of a government contractor," Id., at 1375, there is little room to argue that the Tucker Act's waiver extends beyond a takeover surety or one who effectively completes the project by financing its completion under its performance bond. In the instant case, the surety did neither, for which reason it is not equitably subrogated to the rights of Womack. See Fireman's Fund, 313 F.3d at 1352 (even where a surety takes over performance, the surety is not subrogated to the rights of the taken over contractor for pre-takeover claims).

As the facts clearly reveal, in this case the surety paid the subcontractors and suppliers pursuant to the payment bond issued on behalf of Womack, nothing more. This singular act, irrespective of the number of times it was repeated, did not convert the surety's actions into anything other than payment pursuant to its payment bond obligations. As such, the surety's actions fall within the

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated **only** to the rights of the subcontractor. Such a surety does not step into the shoes of the

> contractor and has no enforceable rights against the [G]overnment.

Insurance Company of the West, 243 F.3d at 1371 (emphasis added). This conclusion is consistent with the Supreme Court's decision in United States v. Munsey Trust Co.,332 U.S. 234 (1947), where the Court concluded

> If the United States were obligated to pay laborers and materialmen unpaid by a contractor, the surety who discharged that obligation could claim subrogation. But nothing is more clear than that labors and materialmen do not have enforceable rights against the United States for their compensation.

332 U.S. at 241. Thus, where the surety simply pays the subcontractors and suppliers, its recourse is the same as that of the subcontractors and suppliers: against the prime contractor, not the Government. In other words, "[the surety] cannot acquire by subrogation what [the subcontractor,] whose rights he claims [,] did not have." Munsey Trust Co., 332 U.S. at 242.

The apparent rationale for distinguishing between performance bond or take over sureties and sureties that merely satisfy the payment obligations of the prime contractor, lies in the benefit derived by the Government from the acts of the surety. The purpose of a surety agreement is "simply to insure completion of the government's project . . . at the contract price." Westech Corp. v. United States, 20 Cl. Ct. 745, 751 (1990)(citing Trinity Universal Ins. Co. v. United States, 382 F.2d 317, 321 (5th Cir. 1967), cert. denied, 390 U.S. 906 (1968).

Once the contract is complete, the Government's interest in assuring performance no longer requires the protection afforded by the bond. Moreover, where the work is complete, but the suppliers and subcontractors are unpaid, "the [G]overnment suffers no damage." Munsey Trust Co., 332 U.S. at 244.

Permitting recourse by the surety against the Government, where the surety neither takes over nor finances completion of contract performance, converts the Government into an insurer for the surety against losses precipitated by the contractor with whom the surety entered into a contract. Instead, the question of loss under the payment bond should be a matter to be resolved between the surety and the contractor that it bonded and that caused the loss. Based upon the superior knowledge and position of the surety, shifting the obligation to the surety to resolve such matters is neither unfair nor unreasonable.[7] Indeed, the surety agreed, for a price, to accept the risk inherent in insuring the performance and payment by a contractor and occupied a better position than the Government in deciding to whom it would issue bonds. Cf., Ransom v. United States, 17 Cl. Ct. 263,

---

[7] In Argonaut Ins. Co. v. United States, 193 Ct. Cl. 483, 434 F.2d 1362 (1970), the Court of Claims reiterated the "well-established principle that the subrogation right claimed by plaintiff is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others." Id., 434 F.2d at 1367 (citing National Sur. Corp. v. United States, 133 F. Supp. 381, 132 Ct. Cl. 724, cert. denied, sub nom., First Nat'l Bank in Houston v. United States, 350 U.S. 902 (1955)).

269 (1989) (information related solely to an individual contractor's ability to perform is better known by surety than Government), aff'd, 900 F.2d 242 (Fed. Cir. 1990).

Thus, the surety in this case did not complete the contract performance of its bonded contractor; nor did it effectively complete the contract performance by paying for completion of contract performance under a performance bond. As such, the surety is not in privity with the Government and further fails to meet the criteria established to bring an equitable subrogation claim against the Government. Given this fact and the fact that the surety was never a "contractor" for the Government, the inescapable conclusion is that there is no basis for this Court to exercise jurisdiction over the claim. This failure equates with a failure to state a claim upon which this Court can grant relief, for which reason the claim should be dismissed. See, e.g., Fisher, 364 F.3d at 1377.

## II. Plaintiff, As A Matter Of Law, Cannot Recover Under The Doctrine Of Equitable Subrogation

In the event this Court concludes that the surety's complaint states a claim upon which relief can be granted, as a matter of law, the Government is entitled to summary judgment. This conclusion follows from the nature of subrogation and the rights of the surety, which are derived from those it paid.

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); Golden Pacific Bancorp. v. United States, 15 F.3d 1066, 1070 (Fed. Cir. 1994); Thomas Creek Lumber & Log Co. v. United States, 36 Fed. Cl. 220, 234 (1996); Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 n.1 (1989). A dispute over a "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Furthermore, "there is no genuine dispute where the evidence 'is so one-sided that one party must prevail as a matter of law.'" National Surety Corp. v. United States, 31 Fed. Cl. 565, 570 (1994)(quoting Anderson, 477 U.S. at 252).

Where a motion for summary judgment is made, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact . . . . [Rather,] 'the burden on the moving party may be discharged by "showing" - - that is, pointing out to the [Court of Federal Claims] - - that there is an absence of evidence to support the non-moving party's case'." Sweats Fashion, Inc. v. Panhill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987)(emphasis in original)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Where materials beyond the pleadings are considered, a motion to dismiss will be considered a motion for summary judgment. RCFC 12(c).

Finally, summary judgment is not regarded as a disfavored procedural short cut, "but rather an integral part of the court

rules as a whole." Celotex Corp. v. Catrett, 477 U.S. at 327; Spirit Leveling Contractors v. United States, 19 Cl. Ct. at 89. Indeed, summary judgment is wholly consistent with the rules of this Court, which are "designed to secure a just, speedy, and inexpensive determination of each and every action." Id., at 89.

Much of the law applicable to this argument is set forth above in support of our demonstration that plaintiff failed to state a claim upon which relief can be granted. Consideration of that law, in the context of summary judgment, further indicates that even if the Court should find that the complaint states a claim, the Government is nevertheless entitled to summary judgment in its favor as a matter of law.

As discussed above, the surety, to the extent it has rights, derives those rights from the contractor it pays. Insurance Co. of the West v. United States, 243 F.3d at 1371. The surety can acquire no rights not possessed by the contractor. United States v. Munsey Trust Co., 332 U.S. at 242. See also Globe Indem. Co. v. United States, 84 Ct. Cl. 587, 595 (1937) ("The party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted"); Sentry Ins. A Mutual Co. v. United States, 12 Cl. Ct. 320, 322 (1987) (surety "cannot, through subrogation, acquire rights not possessed by the one through whom the subrogee claims a right"). From this it necessarily follows that where there

are no claims by any contractor, the surety has inherited an empty right.

In this case, the claim now brought by the surety is not one which could have been asserted by Womack or any of its subcontractors or suppliers against the United States. Womack completed its performance in accordance with its contract with the Government and was paid for that performance. No claims were filed by Womack and no claims or amounts are outstanding to Womack. In fact, final payment on the contract was made in the names of both Womack and the surety. Womack received everything that it bargained for under the contract and does not claim anything additional. Accordingly, Womack has no claims against the Government, and the surety cannot acquire by subrogation any greater rights than those possessed by the contractor. See United States v. Munsey Trust Co.,332 U.S. at 242. Thus, in the absence of loss by Womack, the surety has nothing to enforce against the Government.

Moreover, the subcontractors and suppliers have no rights to enforce against the Government. In this case, the law remains unchanged, "sovereign immunity bars subcontractors and other creditors from enforcing liens on Government property or funds to recoup their losses." Dep't of the Army v. Blue Fox, Inc., 525 U.S. at 265; Munsey Trust Co., 332 U.S. at 241 ("nothing is more clear than that laborers and materialmen do not have enforceable

rights against the United States for their compensation"). Thus, the surety has neither rights nor claims of either Womack or any of its subcontractors or suppliers that have not already been paid or that are otherwise barred by law. Instead, the surety bore the risk that it was paid to bear when it was paid the premiums for issuing the bonds.

## CONCLUSION

For the reasons set forth above, this Court should dismiss plaintiff's complaint pursuant to RCFC 12(b) or, in the alternative, grant the Government's motion for Summary Judgment pursuant to RCFC 56(b).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/sKATHRYN A. BLEECKER
KATHRYN A. BLEECKER
Assistant Director

/sRONALD G. MORGAN
RONALD G. MORGAN
Trial Attorney
Commercial Litigation Branch
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6289

Attorneys for Defendant

June 21, 2004

CERTIFICATE OF FILING

I hereby certify that on this 21st day of June 2004, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND APPENDIX" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s RONALD G. MORGAN

Robert G. Barbour, Esquire
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
7929 Westpark Drive, Suite 400
McLean, Virginia 22102