Action Edit Block Field Record Query ESIG Help

Obligation No: DACW43-98-C-0407 | Delivery Order: NA | Obligation LI: 0001 | Freight:

Amend No: PKA001 | Amend Date: 08-MAY-1998 | Fast Pay:

Work Item: 001V1M | Fund Account: B313983 | Progress Pay: Y

Fund Citation: 96NAX3123 | AMSCO: 015190 | Resource: CONSTSVCS

Description: SHOWER BLDG. REND LAKE | MOA: C2 | Allot: 2413 | EOR: 3200

<PGDN> To Execute RV or Debt Bill Query

| RV No | Reference No | Cert Date | Disb Amount | DOV No | Check No | Pmt Meth |
|---|---|---|---|---|---|---|
| 1 | 28MAR-17JUN98 PE1 | 08-JUL-1998 | 13050.00 | 314164 | 168557 | TCHEC |
| 2 | 18JUN-17JUL98 PE2 | 05-AUG-1998 | 26550.00 | 315846 | 187117 | TCHEC |
| 3 | 18JUL-18JUL98 PE3 | 03-SEP-1998 | 42504.12 | 317815 | 209109 | TCHEC |
| 4 | 17AUG-21SEPT 98 PE4 | 14-OCT-1998 | 43762.50 | 320110 | 239337 | TCHEC |
| 5 | 22SEP-24FEB99 PE#5 | 13-APR-1999 | 28237.50 | 330587 | 347793 | TCHEC |
| 7 | 25FEB-22MAR99 PE#6 | 28-APR-1999 | 9066.20 | 331330 | 357792 | TCHEC |
| 8 | 25FEB-22MAR99 PE#6A | 28-APR-1999 | 17122.68 | 331331 | 357792 | TCHEC |
| | | | | | | |
| | | | | | | |
| | | | | | | |

RR | Invoice | Progress Pmts | RV | AP Transaction | Check Register

Prev Page | Prev | Next | Query | List | Save | Exit | Next Page

Record: 1/7

Start | Corps of Engineers Financi... | http://mvs-cefms.usace.ar... | v2.1.9 Obligation Lin... | 7:00 AM

Addis
Greenberg
Schultz &
izer, L.L.C.
Attorneys at Law

Vayne B. Addis
oel M. Greenberg
ynda Schultz
teven H. Elizer •
David S. Meyerson

Of Counsel:

Marc K. Schwartz Δ
Daniel A. Wolf

• Also admitted in FL
Δ Also admitted in WI

**VIA CERTIFIED MAIL**

October 30, 2001

U.S. Army Corps of Engineers
St. Louis District
1222 Spruce Street
St. Louis, Missouri 63103-2833
Attn: Joan Brickey – Contracting Division

| | | |
|---|---|---|
| Re: | Principal: | Womack Brothers, Inc. |
| | Obligee: | Department of the Army, St. Louis District |
| | Project: | Shower building replacement, Rend Lake, Franklin County, IL |
| | Carrier: | Gulf Insurance Company |
| | Bond No: | AE5943979 |
| | Our File No: | L0212.1 |

Dear Ms. Brickey:

We are writing on behalf of our client Gulf Insurance Company ("Gulf") and its claims manager Contract Operations Planning, Inc. ("COP") to demand payment from the Army Corps of Engineers ("Corps") in the amount of $56,927.38. Gulf was the surety in relation to the above-referenced Womack Brothers project.

On or about March 28, 1998, the Corps issued a notice to proceed to Womack Brothers to replace the shower building at Rend Lake located in Franklin County, Illinois. Womack agreed to perform the work for $180,000.00. On or about November 1, 1998, Gulf and its claims manager COP began receiving payment bond claims from Womack Brothers subcontractors and suppliers. From that time period until October, 1999, Gulf paid over $70,000.00 in payment bond claims.

On February 10, 1999, pursuant to the payment bond claims being made by Womack Brothers subcontractors and suppliers, Gulf via COP asserted its equitable subrogation rights and rights

707 Skokie Boulevard • Suite 540 • Northbrook, Illinois 60062
Telephone: (847) 412-1863 • Facsimile: (847) 412-1831
www.agselaw.com

under the General Indemnity Agreement between Gulf and Womack Brothers and requested that the Corps make no further payment to Womack Brothers without Gulf's consent. (True, correct and complete copies of the February 10, 1999 facsimile coversheet and accompanying letter are enclosed herein). The aforementioned letter was sent to the Corps via facsimile and first class mail. In addition, COP representative Tim Miracle communicated with Mr. Mark Wunch of the Corps legal office in late February, 1999 regarding Gulf's request that the Corps suspend payments to Womack Brothers, and on February 24, 1999, Mr. Miracle sent, via facsimile transmittal, a copy of Gulf's General Indemnity Agreement to Mr. Munch. (A true, correct and complete copy of the February 24, 1999 facsimile coversheet is enclosed herein.)

Pursuant to documentation provided by the Corps in response to a Freedom of Information Act request, the Corps made the following disbursements to Womack subsequent to Gulf's request that the Corps suspend any such payments:

| Scheduled Payment Date | Disbursement Amount |
|---|---|
| April 13, 1999 | ~~$29~~,237.50 28 |
| April 28, 1999 | 9,066.20 |
| April 28, 1999 | 17,122.68 |
| ~~September 15~~, 1999 Oct 8 | 2,501.00 |
| Total Disbursements | $56,927.38 |

Based on the aforementioned, Gulf asserts that it is owed $56,927.38 by the Corps.

In addition, it is Gulf's understanding that the Corps has retained funds constituting the unpaid balance of the contract between the Corps and Womack Brothers. Our records indicate the amount of retained funds is approximately $7,500.00. Gulf requests that the Corps make said funds payable to Gulf. If Gulf's understanding is not accurate, we are requesting that the Corps provide an accounting as to unpaid funds on the Womack Brothers-Rend Lake project.

If you need any additional documentation to investigate Gulf's claim or would like to discuss this matter, please contact us at your earliest convenience. We are requesting that the Corp respond to

this letter within fourteen days so we can advise our client accordingly.

Sincerely,

ADDIS, GREENBERG, SCHULTZ & ELIZER, L.L.C.

David S. Meyerson

David S. Meyerson

Enclosure : correspondence

dsm/army00.ltr

**v2.1.9 Obligation Line Item Status STAT.1**

Action Edit Block Field Record Query ESIG Help

| | | | | | |
|---|---|---|---|---|---|
| Obligation No: | DACW43-98-C-0407 | Delivery Order: | NA | Obligation LI: | 0003 |
| Amend No: | PKA001 | Amend Date: | 08-MAY-1998 | Freight: | |
| Work Item: | 001V1M | Fund Account: | B313983 | Fast Pay: | |
| Fund Citation: | 96NAX3123 | AMSCO: | 015190 | Progress Pay: | Y |
| Description: | SHOWER BLDG. REND LAKE | MOA: | C2 | Resource: | CONSTSVCS |
| | | Allot: | 2413 | EOR: | 3200 |

<PGDN> To Execute RV or Debt Bill Query

| RV No | Reference No | Cert Date | Disb Amount | DOV No | Check No | Pmt Meth |
|---|---|---|---|---|---|---|
| 10 | PE 7A FINAL #2 | 11-FEB-2000 | 7499.00 | 349502 | 584468 | TCHEC |

RR | Invoice | Progress Pmts | RV | AP Transaction | Check Register

Prev Page | Prev | Next | Query | List | Save | Exit | Next Page

Record: 1/1

Start | Corps of Engineers Financi... | http://mvs-cefms.usace.ar... | v2.1.9 Obligation Lin... | 7:01 AM

Addis Greenberg Schultz & Elizer, L.L.C.
Attorneys at Law

Wayne B. Addis
Joel M. Greenberg
Lynda Schultz
Steven H. Elizer •
David S. Meyerson

Of Counsel:

Marc K. Schwartz Δ
Daniel A. Wolf

• Also admitted in FL
Δ Also admitted in WI

RECEIVED
CORPS OF ENGRS
2002 SEP 10 AM 10:06
OFFICE OF COUNSEL

VIA CERTIFIED MAIL

September 4, 2002

Mr. Mark Wunch
Office of Counsel
U.S. Army Corps of Engineers
St. Louis District
1222 Spruce Street
St. Louis, Missouri 63103-2833

Re: Principal: Womack Brothers, Inc.
Obligee: Department of the Army, St. Louis District
Project: Shower building replacement, Rend Lake, Franklin County, IL
Carrier: Gulf Insurance Company
Bond No: AE5943979
Our File No: L0212.1

Dear Mr. Wunch:

We are writing on behalf of our client Gulf Insurance Company ("Gulf") and its claims manager Contract Operations Planning, Inc. ("COP") to demand payment from the Army Corps of Engineers ("Corps") in the amount of $56,927.38. Gulf was the surety in relation to the above-referenced Womack Brothers project. This letter is a follow-up to our correspondence to the Corps dated October 30, 2001 and February 4, 2002.

We have reviewed the documents the Corps provided in response to Gulf's FOIA request dated March 1, 2002, and this letter serves as our last attempt to settle this matter with the Corps short of litigation.

## CHRONOLOGY

On or about March 28, 1998, the Corps issued a notice to proceed to Womack Brothers to

707 Skokie Boulevard • Suite 540 • Northbrook, Illinois 60062

September 4, 2002
Mr. Wunch
Re: Womack/Rend L0212.1
Page two

replace the shower building at Rend Lake located in Franklin County, Illinois. Womack agreed to perform the work for $180,000.00. On or about November 1, 1998, Gulf and its claims manager COP began receiving payment bond claims from Womack Brothers subcontractors and suppliers. From that time period until October, 1999, Gulf paid over $70,000.00 in payment bond claims.

On February 10, 1999, pursuant to the payment bond claims being made by Womack Brothers subcontractors and suppliers, Gulf via COP asserted its equitable subrogation rights and rights under the General Indemnity Agreement between Gulf and Womack Brothers and requested that the Corps make no further payment to Womack Brothers without Gulf's consent. The aforementioned letter was sent to the Corps via facsimile and first class mail. On December 28, 2001, Mr. Archie Ringgenberg, a Corps Contracting Officer, acknowledged in writing receipt of the February 10, 1999 correspondence. (A true, correct and complete copy of the December 28, 2001 correspondence is attached hereto.) In addition, COP representative Tim Miracle communicated with Mr. Mark Wunch of the Corps legal office in late February, 1999 regarding Gulf's request that the Corps suspend payments to Womack Brothers, and on February 24, 1999, Mr. Miracle sent, via facsimile transmittal, a copy of Gulf's General Indemnity Agreement to Mr. Munch.

Pursuant to documentation provided by the Corps in response to a Freedom of Information Act request, the Corps made the following disbursements to Womack subsequent to Gulf's request that the Corps suspend any such payments:

| Scheduled Payment Date | Disbursement Amount |
|---|---|
| April 13, 1999 | $29,237.50 |
| April 28, 1999 | 9,066.20 |
| April 28, 1999 | 17,122.68 |
| September 15, 1999 | 2,501.00 |
| Total Disbursements | $56,927.38 |

In addition, it is Gulf's understanding that the Corps has retained funds constituting the unpaid balance of the contract between the Corps and Womack Brothers. Our records indicate the amount of retained funds is approximately $7,500.00. The Corps responded in its December 28, 2001 correspondence that there was an IRS lien in relation to said funds. Despite our request for a copy of said lien in our February 4, 2002 correspondence, the lien has not been made available by the Corps.

September 4, 2002
Mr. Wunch
RE: Womack/Rend L0212.1
Page three

## LAW

In its December 28, 2001 correspondence denying Gulf's request for payment, the Corps cited Federal Acquisition Regulation (FAR) Part 28, 28.106-7(a) as a justification for the Corps making payments to Womack Brothers, Inc., after Gulf notified the Corps that payment bond claims were being made by Womack's subcontractors/materialmen, and Gulf's request that the Corps suspend payments to Womack. The reliance on FAR 28.106-7(a) is misplaced.

FAR 28.106-7(b), is a more specific provision than subparagraph (a), and it specifically applies to sureties. Subparagraph (b) required the Corps to withhold final payment to Womack. Although subparagraph (b) is limited to final payment after contract completion, case law has established that a surety's equitable subrogation rights extend to progress payments during contract performance.

In *Transamerica Premier Ins. Co. v. U.S.*, 32 Fed. Cl. 308, 310 (1994), the court was presented with the following issue:

> The issue is whether plaintiff, a Miller Act surety, is entitled to invoke the doctrine of equitable subrogation to recover from the Government the amount of contract proceeds that were paid over to plaintiff's insured (the contractor) after (i) the Government was made aware of plaintiff's competing interest in those funds, and (ii) the contract had been completed to the Government's satisfaction.

The *Transamerica* court set the following standard:

> If it is made to appear that the Government's officials, after due notice of the facts giving rise to an equitable right in the plaintiff surety company, and of the plaintiff's assertion of such a right, paid out, without a valid reason for so doing, the money in question to someone other than the plaintiff, the plaintiff will be entitled to a judgment. *Id.* at 314.

In establishing the aforementioned standard the *Transamerica* Court examined basic tenets of surety law:

As holder of the contract funds, suretyship law requires the Government to use "reasonable care in the custody and preservation of collateral in its

> possession." Restatement (Third) of Suretyship § 38 cmt. e (Tent.Draft No. 2, April, 1993). Thus, the Government, although not in privity with the surety, does have an obligation, consistent with its own business needs, to avoid actions that impair the surety's interest in the contract collateral, *i.e.*, the contract proceeds on hand payable for work done. And that obligation is triggered not only when the Government is informed of the contractor's actual default but also--and perhaps more typically--when the Government receives reasonable warning from the surety of a contractor's *threatened* default under the bond. *Id*. at 313.

In *Balboa Ins. Co. v. U.S*, 775 F.2d 1158, 1162 (C.A. Fed.,1985.), the court held:

> [U]pon notification by the surety of the unsatisfied claims of materialmen, the Government became a stakeholder with respect to the amount not yet expended under the contract that it holds at the time of notification of default. However, **we can discern no reasonable basis for the Government's distinction between retainages and progress payments when, as in this case, the surety informed the Government of the contractor's alleged breach before the payment was disbursed."** (emphasis added)

The *Balboa* court went on to hold that "It is clear from a review of the cases that the Courts make no distinction between earned progress payments and retained percentages in determining the surety's equitable rights upon the contractor's default. The surety's rights apply to the *total fund*, no matter what it is called, which remains in the hands of the United States (or any owner-obligee) *at the time the notice of default* under its bond is established."

The holdings in *Transamerica* and *Balboa* establish that upon receipt of Gulf's February 10, 1999 notice that payment bond claims were being made by Womack's subcontractors and suppliers, the Corps should have used reasonable care to protect the equitable subrogation rights of Gulf, the surety. Thus, no further progress payments should have been made and final payment should have been withheld until the Corps ascertained and considered the competing interests in contract funds between Womack and Gulf. Instead, the Corps continued to make payments to Womack despite the bond claims being made by Womack's subcontractors and suppliers and despite the equitable subrogation rights of Gulf. Clearly, the Corps did not adequately protect the rights of the surety under the circumstances.

Therefore, Gulf is legally entitled to indemnification from the Corps in the amount of $56,927.38 in addition to the $7,500.00 of contract funds retained by the Corps.

Please advise us in writing whether the Corps will reconsider its position articulated in

the December 28, 2001 correspondence in which it denied Gulf's original request for indemnification.

Sincerely,

ADDIS, GREENBERG, SCHULTZ & ELIZER, L.L.C.

David S. Meyerson

David S. Meyerson

Enclosure : 12/28/01 correspondence

Cc: Contracting Officer
Tim Miracle

dsm/Womack/army6

**DEPARTMENT OF THE ARMY**
ST. LOUIS DISTRICT, CORPS OF ENGINEERS
1222 SPRUCE STREET
ST. LOUIS, MISSOURI 63103-2833

REPLY TO
ATTENTION OF

December 28, 2001

Contracting Division

David S. Meyerson
Addis, Greenberg, Schultz & Elizer, L.L.C.
707 Skokie Blvd, Suite 540
Northbrook, IL 60062

Re: Womack Brothers, Inc. / Gulf Insurance Company / Bond No. AE5943979
Contract No. DACW43-98-C-0407, Shower Building Replacement, Rend Lake

Dear Mr. Meyerson:

I am writing in reply to your letter of October 30, 2001 on the above subject. I can confirm that there was a problem with the government's contractor, Womack Brothers, Inc. not paying their sub-contractors and/or suppliers on Contract No. DACW43-98-C-0407 in the 1999 timeframe. In addition, I can acknowledge that Mr. Tim Miracle, from COP, Inc. sent a fax to the Corps, on February 10, 1999, "requesting that we make no further payments to Womack". Likewise, the scheduled payment dates set out in your letter appear to be accurate with regard to the Corps making payments to our contractor.

However, with regard to your letter's demand for $56,927.38 from the Corps, I provide the following information. The Army Corps of Engineer's contracting program is controlled by a regulation entitled, the Federal Acquisition Regulation (FAR). Provisions of the FAR govern every step of our contracting program from initial solicitation, to contract management to final payment. It was the FAR, and not Mr. Miracle's fax request, which governed the Corps' payments to our contractor, Womack Brothers, Inc. during the performance of their contract. Indeed, all of the payments dates recited in your letter were during the contractor's performance.

The applicable FAR provision, which governed the Corp's payment to their contractor at that time, is FAR, Part 28 (Bonds and Insurance), 28.106-7 Withholding contract payments. FAR Part 28.106-7(a) required payment to Womack Brothers, Inc. at the time of Mr. Miracle's request, and I quote that provision below:

> (a) During contract performance, agencies shall not withhold payments due contractors or assignees because subcontractors or suppliers have not been paid.

That FAR provision is the Corps' justification for the questioned payments to our contractor. Therefore, we deny the demand for payment set out in your letter of October 30, 2001.

Now, I will address the portion of your letter that deals with the Corps retaining funds on the Womack Brothers, Inc. contract. The Corps is still holding a $7,500 amount that would constitute final payment on the contract. However, the Internal Revenue Service (IRS) has made it known to the Corps that they desire to collect these funds to offset monies owed to them by Womack Brothers, Inc. It has been my experience that the IRS takes priority on claims made for money owed to government contractors.

For additional information, if needed, please contact Joan Brickey, Contract Specialist, CEMVS-CT-Y, at (314) 331-8521. She can also be reached via e-mail at Joan.C.Brickey@mvs02.usace.army.mil.

Sincerely,

Archie C. Ringgenberg
Contracting Officer

OC: Mark Wunsch

OC

DEPARTMENT OF THE ARMY
ST. LOUIS DISTRICT, CORPS OF ENGINEERS
1222 SPRUCE STREET
ST. LOUIS, MISSOURI 63103-2833

REPLY TO
ATTENTION OF:

Office of Counsel

January 13, 2003

Mr. David S. Meyerson
Addis, Greenberg, Schultz & Elizer, L.L.C.
707 Skokie Blvd.
Northbrook, IL 60062

RE: Womack Brothers, Inc. / Gulf Insurance Company / Bond No. AE5943979
Contract No. DACW43-98-C-0407, Shower Building Replacement, Rend Lake, Illinois

Dear Mr. Meyerson:

This letter is in reply to your letter of September 4, 2002, addressed to myself. In said letter you asked whether the Corps of Engineers (Corps) would reconsider its position as articulated in a letter to you, dated December 28, 2001, from Mr. Archie Ringgenberg, the Contracting Officer for the subject contract. The Corps position, as stated in Mr. Ringgenberg's letter, was that the Corps denied the demand for payment in the amount of $56,927.38 that you had made in a previous letter, dated October 30, 2001.

To answer the specific question in your September 4, 2002 letter, the Corps will not reconsider its position as stated in Mr. Ringgenberg's letter of December 28, 2001.

Finally, your last two letters indicated that you had not received a copy of the IRS Notice of Levy (lien), dated 11/12/99, which was sent to the Corps to cover any monies owed to Womack Brothers. I have attached a copy of that lien to this letter and faxed you a copy of the lien on January 10, 2003.

If you have additional questions concerning this matter, please call me at 314/ 331-8732.

Sincerely,

Mark A Wunsch

Mark A. Wunsch
Assistant District Counsel

Encl.

CC: CEMVS-CT (Ringgenberg)

Printed on Recycled Paper