No. 03-626C
(Senior Judge Smith)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GULF INSURANCE COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

---

Robert G. Barbour, Esquire
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
7929 Westpark Drive, Suite 400
McLean, Virginia 22102

Attorney for Plaintiff

August 2, 2004

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ ii

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT ........................................ 1

PLAINTIFF'S BRIEF ........................................ 2

STATEMENT OF THE QUESTIONS INVOLVED ........................................ 2

CONCISE STATEMENT OF THE CASE ........................................ 2

ARGUMENT ........................................ 4

I. Introduction ........................................ 4

II. The Government's Motion to Dismiss Must be Denied ........................................ 6

III. The Government's Motion For Summary Judgment Must be Denied ........................................ 9

IV. Gulf, as a Matter of Law, Is Entitled to Judgment on Its Complaint ........................................ 12

CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

## CASES


Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217 (Fed. Cir. 1998) ....8

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ....12

Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985) ....11, 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ....12

F. Alderete Gen. Contracting, Inc. v. United States, 715 F.2d 1476 (Fed. Cir. 1983) ....6

Fireman's Fund Ins. Co. v. United States, 190 Ct. Cl. 804, 421 F.2d 706 (1970) ....7

Golden Pac. Bancorp v. United States, 15 F.3d 1066 (Fed. Cir. 1994) ....12

Home Indem. Co. v. United States, 180 Ct. Cl. 173, 376 F.2d 890 (1967) ....7, 11

Ins. Co. of the West v. United States, 1999 U.S. Claims LEXIS 313 (Fed. Cl. Dec. 10, 1999) ....5

Ins. Co. of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ....*passim*

Ins. Co. of the West v. United States, 55 Fed. Cl. 529 (2003) ....*passim*

Int'l Fid. Ins. Co. v. United States, 25 Cl. Ct. 469 (1992) ....13

Newark Ins. Co. v. United States, 144 Ct. Cl. 655, 169 F. Supp. 955 (1959) ....14

Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962) ....7, 8

Ransom v. United States, 900 F.2d 242 (Fed. Cir. 1990) ....10

Transamerica Ins. Co. v. United States, 989 F.2d 1188 (Fed. Cir. 1993) .... 8

Transamerica Premier Ins. Co. v. United States, 32 Fed. Cl. 308 (1994) ....12, 13, 14

United Elec. Corp. v. United States, 227 Ct. Cl. 236, 647 F.2d 1082 (1981) ....7

United Pac. Ins. Co. v. United States, 162 Ct. Cl. 361, 319 F.2d 893 (1963) ....7

United States Fid. & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973) ....7

United States v. Munsey Trust Co., 332 U.S. 234 (1947) .............................................7, 8

United States v. Testan, 424 U.S. 392 (1976) .................................................................12

## STATUTES, RULES AND REGULATIONS

28 U.S.C. § 1491 .......................................................................................... 4, 9, 12

RCFC 12 .......................................................................................................... 1

RCFC 56 .......................................................................................................... 1, 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GULF INSURANCE COMPANY,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **No. 03-626C** |
| **THE UNITED STATES,** | **)** | **(Senior Judge Smith)** |
| | **)** | |
| **Defendant.** | **)** | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's July 6, 2004 Order and Rules 12 and 56 of the United States Court of Federal Claims ("RCFC"), Plaintiff, Gulf Insurance Company ("Gulf"), submits this response in opposition to Defendant's motion to dismiss or, in the alternative, for summary judgment and respectfully requests that the Court deny Defendant the relief sought therein. In addition, Gulf respectfully requests that the Court enter summary judgment in Gulf's favor on its Complaint on the grounds that there is no genuine issue as to any material fact and Gulf is entitled to judgment as a matter of law. In support of its opposition to Defendant's motion and its own cross-motion for summary judgment, Gulf relies upon the pleadings, the parties' Joint Stipulation of Material Facts and the following Brief.

# PLAINTIFF'S BRIEF

## STATEMENT OF THE QUESTIONS INVOLVED

1. Whether a surety that discharges the debts of a Government contractor by making payments to subcontractors pursuant to obligations under a payment bond is equitably subrogated to the rights of the defaulting contractor such that it may pursue a direct claim against the Government for funds that it alleges were wrongfully distributed to the defaulting contractor?

2. Whether Plaintiff, as a matter of law, is entitled to recover payments wrongfully distributed by the Government to a defaulting contractor after the Government received notice from Plaintiff of the contractor's default and became a stakeholder in the contract funds?

## CONCISE STATEMENT OF THE CASE

On or about February 18, 1998, the United States Army Corp of Engineers, St. Louis District ("Government"), entered into Contract No. DACW43-98-C-0407 ("the Contract") with Womack Brothers ("Womack") for a construction project designated as the Shower Replacement Building, North Sandusky Access Area, Rend Lake, Big Muddy River, in Franklin County, Illinois (the "Project"). JS1; Compl. ¶ 4; Ans. ¶ 4.[1] On or about March 12, 1998, Plaintiff, Gulf Insurance Company ("Gulf"), as surety for Womack, executed a performance bond in the amount of $180,0000 ("Performance Bond") and a payment bond in the amount of $90,000 ("Payment Bond") in connection with and as required under the Contract and the Miller Act.

[1] "JS_" refers to the paragraph in the Joint Stipulations agreed to by the parties for purposes of dispositive motions. "Compl. ¶ __" refers to the paragraph in Plaintiff's Complaint filed March 21, 2003. "Ans. ¶__" refers to the paragraph in Defendant's Answer filed July 18, 2003.

JS2; Compl. ¶ 5; Ans. ¶ 5. Notice to proceed on the Contract was issued to and acknowledged by Womack on April 1, 1998. JS4.

On February 10, 1999, the Government received a letter from a Gulf representative, Contract Operations Planning, Inc. ("COP"), advising that Gulf had received formal notice of claim from one of Womack's suppliers on the Project. JS5; Compl. ¶ 7; Ans. ¶ 7. The February 10, 1999 letter stated, "in accordance with the surety's equitable subrogation rights and further rights granted under the General Indemnity Agreement executed by Womack Brothers, it is hereby requested that no further payments be released to Womack Brothers, or for its benefit, without prior consent of this office." JS6; Compl. ¶ 7; Ans. ¶ 7.

Subsequent to Gulf's February 10, 1999 letter to the Government, Gulf made payments in excess of $56,937.38 in connection with unsatisfied claims of Womack's subcontractors and suppliers for the Project. JS9; Compl.¶ 8. The payments made by Gulf to Womack's subcontractors and suppliers were made pursuant to the Payment Bond provided for the Project. JS10; Compl. ¶ 8.

On or about March 22, 1999, Womack's work under the Contract was substantially completed and accepted by the Government. JS7; Compl. ¶ 9; Ans. ¶ 9. Subsequent to March 22, 1999, the Government made four (4) payments to Womack totaling $56,937.38. JS8; Compl.¶ 10; Ans.¶ 10.

On or about October 30, 2001, the Government received a demand letter from Gulf's counsel seeking $56,927.38 for funds alleged to have been improperly paid to Womack. JS11. On or about January 13, 2003, the Government denied Gulf's demand for payment of the amounts paid to Womack. JS12. Following that denial, Gulf filed suit in this Court on March 21, 2003, claiming that: 1) Gulf was equitably subrogated to Womack's contractual rights

against the Government; 2) upon receiving notice, the Government became a stakeholder with respect to the remaining Contract funds not yet expended; 3) as a stakeholder the Government had a duty to avoid actions that would impair Gulf's interest in Contract funds payable for work performed; and 4) the Government breached its duty by wrongfully disbursing payments to Womack totaling $56,937.38 after March 22, 1999. JS13; Compl. ¶ ¶ 12,13,14,15. Gulf based its allegations regarding this Court's jurisdiction upon the Tucker Act, 28 U.S.C. § 1491, which states, in pertinent part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

## ARGUMENT

### I. Introduction

The Government moves this Court to dismiss Gulf's Complaint on grounds relating to this Court's jurisdiction and the scope of congressional consent to waiver of the Government's traditional immunity to suit. Specifically, the Government asserts that the Tucker Act's consent to suit in this Court, which the Government acknowledges extends to both Government contractors and those who "stand in the shoes" of Government contractors, does not extend so far as to include a surety that discharges the debt of a Government contractor by making payments to subcontractors or suppliers pursuant to obligations under a payment bond.

The Government bases its motion upon its reading of Insurance Company of the West v. United States, 243 F.3d 1367 (Fed. Cir. 2001) ("West II"),[2] an opinion by the United States

[2] West II was an appeal involving a surety's suit against the Government for wrongful payment of contract funds brought in the Court of Federal Claims. The Government moved to dismiss the

Court of Appeals for the Federal Circuit involving similar facts to those presented in this dispute. That decision, so the Government asserts, strictly limits the circumstances in which a surety may succeed to the rights of a contractor (i.e., "stand in its shoes") to those where the surety takes over and completes a contract or finances completion of a contract pursuant to its obligations under a performance bond. Relying upon language included within dicta from the West II decision, the Government argues that a payment bond surety's equitable subrogation rights are limited to those rights possessed by the subcontractors and suppliers it pays and that such a surety does not step into the shoes of the contractor. Such a surety, the Government's argument continues, has no enforceable rights against the Government. Because Gulf's payments were made to Womack's subcontractors and suppliers pursuant to a payment bond, the Government asserts that Gulf has no valid equitable subrogation claim against the Government and, as such, this Court lacks jurisdiction over Gulf's claim.

The Government's argument, however, conveniently overlooks this Court's statements regarding the West II decision and, specifically, this Court's discussion and holdings regarding the scope of a payment bond surety's equitable subrogation rights. Moreover, the Government ignores this Court's holdings regarding the very language in the West II decision on which the Government's argument so heavily relies. In fact, following the remand of the West II case, this Court in Insurance Company of the West v. United States, 55 Fed. Cl. 529 (2003) ("West III"), specifically addressed, analyzed and rejected the very argument on which the Government's

---

surety's claim for lack of subject matter jurisdiction, arguing that the Court of Federal Claims lacked jurisdiction over a surety's equitable subrogation claims of a surety against the Government. Ins. Co. of the West v. United States, 1999 U.S. Claims LEXIS 313, at *2-3 (Fed. Cl. Dec. 10, 1999) ("West I"). The Court of Federal Claims denied the Government's motion to dismiss, but certified for interlocutory appeal the question of whether the Government has waived sovereign immunity for the equitable subrogation claims of a surety against the Government. Id. at *3-4.

motion in this case is premised. For all the reasons discussed in detail below, the Government's motion to dismiss or in the alternative, for summary judgment, should be denied and summary judgment should be entered in favor of Gulf.

II. The Government's Motion to Dismiss Must Be Denied

The Government's assertion that this Court lacks jurisdiction over Gulf's claim is premised upon its argument that Gulf, as a surety acting solely pursuant to its obligations under the Payment Bond issued for the Project, "fails to meet the criteria established to bring an equitable subrogation claim against the Government." Defendant's Brief, p. 15. At its heart, the Government's argument is based upon language in the Federal Circuit's decision in West II and, specifically, its reference in dicta[3] to the

> well-established [rule] that a surety who discharges a contractor's obligation to pay subcontractors is subrogated **only** to the rights of the subcontractor. Such a surety does not step into the shoes of the contractor and has no enforceable rights against the [G]overnment.

Defendant's Brief, pp. 12-13 (emphasis in Brief but not original) (citing West II, 243 F.3d at 1371). This Court, however, has specifically addressed and rejected the Government's argument based upon the language in question. In the proceedings that followed remand of the West II case, the Defendant (also the Government) filed a motion remarkably similar to its pending motion in this case seeking dismissal or, alternatively, summary judgment. The Government based its motion upon, *inter alia*, this very language from the West II opinion. West III, 55 Fed. Cl. at 530-31. Specifically, the Defendant argued that the language from West II limits payment

---

[3] In its decision in West III, this Court specifically held that the quoted language "was not central to the West II court's holding and may be viewed properly as dicta." West III, 55 Fed. Cl. at 535. This Court went on to highlight a caution from the Federal Circuit that dicta in its decisions "should be read in the light of the court's central holding and the controlling fact in that case." Id. (citing F. Alderete Gen. Contracting, Inc. v. United States, 715 F.2d 1476, 1479 (Fed. Cir. 1983)).

bond sureties to asserting only the rights that subcontractors, and not contractors, have against the Government. Id. at 534. This Court denied the Defendant's motion in its entirety and, with specific regard to the West II language held that "[w]hile the law is settled that subcontractors lack standing to sue the Government directly, this court respectfully must conclude that the dicta in West II -- stating that a surety steps into the shoes of a subcontractor, and not the contractor for which it issued bonds -- are not supported by precedent." West III, 55 Fed. Cl. at 535.

In reaching that conclusion, this Court first examined the case cited by the West II court in support of its statement that sureties are subrogated only to the rights of paid subcontractors, United States v. Munsey Trust Co., 332 U.S. 234 (1947). As an initial finding, this Court noted that nothing in either Munsey or Pearlman v. Reliance Insurance Co., 371 U.S. 132 (1962), a case revisiting the Munsey opinion, restricted sureties to invoking the rights of subcontractors only. West II, 55 Fed. Cl. at 537. In fact, as this Court wrote, "the Court in Pearlman framed the doctrine of equitable subrogation as allowing the surety to enforce the rights of a party whose debts the surety discharged." Id. (citation omitted).

This Court next highlighted a series of cases decided after Pearlman in which its predecessor, the Court of Claims, expressly recognized the right of a surety to subrogate to the position of a defaulting contractor. West II, 55 Fed. Cl. at 537-38 (citing *inter alia*, Fireman's Fund Ins. Co. v. United States, 421 F.2d 706, 708 (Ct. Cl. 1970); Home Indem. Co. v. United States, 376 F.2d 890, 893 (Ct. Cl. 1967); United Pac. Ins. Co. v. United States, 319 F.2d 893, 895 (Ct. Cl. 1963); United States Fid. & Guar. Co. v. United States, 475 F.2d 1377, 1382 (Ct. Cl. 1973); United Elec. Corp. v. United States, 647 F.2d 1082, 1086 (Ct. Cl. 1981)). In connection with its analysis, this Court noted that the Court of Claims "recognized that a surety, after paying off any outstanding claims by subcontractors, becomes subrogated to the rights of the contractor

and the subcontractors; because the subcontractors have no standing to sue the United States directly, the surety must, and can, stand in the shoes of the contractor to bring its action." West III, 55 Fed. Cl. at 537.

Finally, this Court returned its analysis to the decisions of the Federal Circuit, noting that after Munsey and Pearlman the Federal Circuit had specifically affirmed the right of a surety to step into the shoes of the contractor. West III, 55 Fed. Cl. at 538 (citing Transamerica Ins. Co. v. United States, 989 F.2d 1188, 1193 (Fed. Cir. 1993); Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1221 (Fed. Cir. 1998)).

This Court concluded its analysis as follows:

> Read against the foregoing precedent, the dicta in West II do not define the scope of a surety's rights under the doctrine of equitable subrogation. When a surety, after financing or completing the performance of a defaulted contractor, discharges the outstanding claims of the subcontractors, it may subrogate to the rights of both the defaulted contractor and the subcontractors. Because the subcontractors have no standing to sue the Government directly, the surety must invoke the contractor's right to sue in order to sustain its claim against the Government. If a surety were limited to exercising the rights of only the subcontractors, under the doctrine of equitable subrogation, the surety would never be able to recover directly from the contracting agency. Such a result would contradict a century of jurisprudence on equitable subrogation.

Id. (emphasis added; internal citations omitted).

With due respect to the Federal Circuit, this Court's analysis of the scope of a surety's equitable subrogation rights is sound, as is its decision not to follow the Government's reading of West II. More importantly, this Court's decision in West III is controlling of the issues presented in the Government's pending motion. When Gulf discharged Womack's debts by making payments to subcontractors and suppliers pursuant to its obligations under the Payment Bond, Gulf became equitably subrogated to the rights of both those subcontractors and suppliers and

Womack. As such, Gulf may rely on the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491, and bring suit against the Government in this Court. See West II, 243 F.3d at 1375 ("we conclude that a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States"). On this basis, the Government's motion to dismiss based upon lack of jurisdiction must be denied.

III. The Government's Alternative Motion for Summary Judgment Must be Denied

In the alternative to its argument that this Court lacks jurisdiction over Gulf's claim, the Government asserts that it is entitled to summary judgment. The Government's argument is based upon the nature and extent of the rights to which the Government asserts Gulf is or could be subrogated. Specifically, the Government argues that because a subrogee can acquire no greater rights than the party for which it is substituted, and because neither Womack nor any of its subcontractors has any claim that could be brought against the Government, Gulf as subrogee can have no claim against the Government. With regard to Womack, the Government bases its argument on Womack's receipt of final payment and "everything that it bargained for under the contract." Defendant's Brief, p. 18. The Government's argument, however, misses the mark because it fails to address (or even to acknowledge) the gravamen of Gulf's Complaint -- that the Government breached its duty as a stakeholder by wrongfully disbursing payments to Womack after receiving notice of Womack's default.

The Government's argument is similar to that asserted by the Government as Defendant in West III. That case also involved a claim asserted by a surety as subrogee to a defaulting contractor, for wrongful disbursement of funds. The Government in West III argued that by paying the contractor the entire contract price it had discharged all its duties under the contract

thereby nullifying the surety's claim. The Government also pointed to a release executed by the contractor upon receipt of the alleged improper payment and argued that "as [the contractor] would be bound by its release of claims against the Government so [the surety] must be bound by the release." West III, 55 Fed. Cl. at 534. In essence, the Government argued in West III that because the contractor had no assertable claims against the Government, the surety standing in the contractor's shoes by virtue of subrogation similarly had no assertable claim against the Government.

As here, however, the Government in West III failed to address the plaintiff's argument that the Government breached its duty as a stakeholder in the contract funds at issue. Id. at 539. In connection with its analysis, the West III Court determined that the Government's admissions reflected that it was, in fact, a stakeholder in the contract funds at the time they were distributed to the contractor. West III, 55 Fed. Cl. at 539-40. On this ground, this Court denied the Government's motion, finding that "[t]he Government cannot forward the theory that it has discharged its duty under the contract . . . when it has admitted to performing acts which render it a stakeholder." Id. at 540.[4]

With regard to the pending motion, it is beyond dispute that the Government was a stakeholder at the time the $56,937.38 in payments at issue were made. In that regard, it is well established that upon notice from a surety of a bonded contractor's default, the Government becomes a stakeholder in the contract funds not yet expended. West III, 55 Fed. Cl. at 539; see also Ransom v. United States, 900 F.2d 242, 245 (1990) ("The government becomes a 'stakeholder" for remaining contract proceeds when a payment and performance bond surety

[4] The Government's arguments regarding payment and release in West III were couched in its motion to dismiss as opposed to its motion for summary judgment. This distinction, however, appears to have had no bearing on the Court's analysis.

notifies the Government that the surety's interest is in jeopardy because of a default by the contractor"); Balboa Inc. Co. v. United States, 775 F.2d 1158, 1162 (Fed. Cir. 1985) ("We agree with the conclusion of the Court of Claims that, upon notification by the surety of unsatisfied claims of the materialmen, the Government became a stakeholder with respect to the amount not yet expended under the contract that it holds at the time of notification of default").

On February 10, 1999, Gulf provided the Government with notice that it had received a formal claim from one of Womack's suppliers and specifically requested that "no further payments be released to Womack Brothers, or for its benefit, without prior consent of this office." Without doubt, as of February 10, 1999, the Government may properly be characterized as a stakeholder in any contract funds payable or to become payable to Womack. See West III, 55 Fed. Cl. at 539 (holding that the Government became a stakeholder upon receipt of a letter from the surety's claims analyst confirming that the contractor was unable to complete certain bonded contracts and requesting that contract funds be sent to the surety); Home Indem. Co. v. United States, 376 F.2d 890, 893 (1967) (holding that the Government became a stakeholder upon the surety's request that contract funds be retained pending settlement of unpaid laborer's claims). Moreover, it is clear that the Government was a stakeholder in contract funds at the time it made the four payments to Womack that are the focus of Gulf's Complaint, all of which occurred sometime after March 22, 1999. As such, the Government cannot forward the theory that it has discharged its duty under the contract thereby precluding Gulf from pursuing its claim for wrongful payment. See West III, 55 Fed. Cl. at 540. On this basis, the Government's alternative motion for summary judgment must be denied.

IV. Gulf, As a Matter of Law, is Entitled to Judgment on Its Complaint

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1071 (Fed. Cir. 1994). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. Anderson, 477 U.S. at 248. Summary judgment is not regarded as a disfavored procedural shortcut, "but rather an integral part of the [court] rules as a whole." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

While the Tucker Act, 28 U.S.C. § 1491, provides this Court with jurisdiction, it does not create any substantive right of recovery against the Government for money damages. United States v. Testan, 424 U.S. 392, 398 (1976). A claimant, therefore, must look beyond this jurisdictional statute and identify some substantive provision of law to establish entitlement. As reflected in Gulf's Complaint, Gulf has identified such a substantive provision of law in the Government's well-recognized duty, as a stakeholder in contract funds, to avoid actions that would impair Gulf's interest in contract funds payable for work performed. See Transamerica Premier Ins. Co. v. United States, 32 Fed. Cl. 308, 313 (1994) ("the Government, although not in privity with the surety, does have an obligation, consistent with its own business needs, to avoid actions that impair the surety's interest in the contract collateral, i.e., the contract proceeds on hand payable for work done"); see also Balboa Ins. Co. v. United States, 775 F.2d 1158, 1162 (Fed. Cir. 1985) (recognizing the Government's duty as a stakeholder to act with reasonable discretion).

As discussed above, it is beyond dispute that the Government's status as a stakeholder of contract funds arose before and existed at the time the Government made the four payments

totaling $56,937.38 at issue in Gulf's Complaint. On February 10, 1999, Gulf provided the Government with notice that Gulf had received a formal claim from one of Womack's suppliers and specifically requested that no further payments be released to Womack without Gulf's consent. At this juncture, the Government was on notice of possible competing claims to any retained Contract funds and its status as a stakeholder was cemented. See West III, 55 Fed. Cl. at 539 (holding the Government became a stakeholder upon receipt of a letter from the surety's claims specialist confirming that the contractor was unable to complete certain bonded contracts and requesting that Contract funds be sent to the surety); Transamerica Premier, 32 Fed. Cl. at 313 (holding that the Government's obligations as a stakeholder are triggered "not only when the Government is informed of the contractor's actual default but also -- and perhaps more typically -- when the Government receives reasonable warning from the surety of a contractor's **threatened** default under the bond").

Neither is there any basis to dispute the nature of the Government's duty as a stakeholder in the remaining Contract funds. As the parties have stipulated, on March 22, 1999, Womack's work under the Contract was substantially completed and accepted by the Government. At this juncture, the Government's interest in retaining Contract funds disappeared and its duty was to avoid sending retained funds to the wrong party. Int'l Fid. Ins. Co. v. United States, 25 Cl. Ct. 469, 477 n.11 (1992) ("when the [Government] is acting solely as a stakeholder, i.e., when it has no interest in timely completion of the project, its duty is to pay the proper person and be liable for any incorrect distribution"); Transamerica Premier, 32 Fed. Cl. at 315-16 ("the Government's interest [after performance] does not extend beyond avoiding liability for sending retained funds to the wrong party"). Thus, as of March 22, 1999, the Government's duty was to make sure the Contract funds in its possession were not paid to the wrong party.

Finally, it is beyond dispute that the Government breached its duty as a stakeholder when, contrary to Gulf's notice and after the completion of Womack's work, the Government made payments to Womack totaling $56,937.38. As this Court has held,

> where the Government has on hand contract funds owing for work done and is alerted, by the surety, to the possibility of unpaid materialmen's claims, and to the surety's demand that the contract funds be protected pending investigation, it may not dispense those funds to the contractor -- at least not without running the distinct risk of having to pay twice. The rule is one this Court has long adhered to.

Transamerica Premier, 32 Fed. Cl. at 314; see also Newark Ins. Co. v. United States, 169 F. Supp. 955, 957 (1959) ("If it is made to appear that the Government's officials, after due notice of the facts giving rise to an equitable right in the plaintiff surety company, and of the plaintiff's assertion of such a right, paid out, without a valid reason for so doing, the money in question to someone other than the plaintiff, the plaintiff will be entitled to judgment"). Thus, the payments made by the Government to Womack after March 22, 1999 were made in clear violation of its duty as a stakeholder as recognized by this Court.

Because there is no material dispute as to any of the facts establishing the Government's status as a stakeholder, the duty that status placed upon the Government, and the Government's actions amounting to breach of that duty, Gulf is entitled to judgment on its claim as a matter of law. See, e.g. Transamerica Premier, 32 Fed. Cl. 308 (granting summary judgment against the Government where it disbursed funds in violation of its duty as a stakeholder.)

CONCLUSION

For the reasons set forth above, Gulf respectfully requests that this Court deny the Government's motion to dismiss or, in the alternative, for summary judgment and that this Court grant Gulf's motion for summary judgment pursuant to RCFC 56(b).

Respectfully submitted,

/s Robert G. Barbour
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
7929 Westpark Drive, Suite 400
McLean, VA 22102
(703) 749-1000

Attorney for Plaintiff

August 2, 2004

CERTIFICATE OF FILING

I hereby certify that on this 2nd day of August 2004, a copy of PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s Robert G. Barbour

Ronald G. Morgan, Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530