No. 03-626C
(Senior Judge Smith)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GULF INSURANCE COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

RONALD G. MORGAN
Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6289

Attorneys for Defendant

August 20,2004

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . .ii

DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS MOTION
FOR SUMMARY JUDGMENT AND REPLY . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Plaintiff, Who Neither Paid To Complete The Contract Performance Nor Took Over Contract Performance, Is Not Equitably Subrogated To The Rights Of The Contractor, For Which Reason Its Complaint Fails to State A Claim Upon Which Relief Can Be Granted . . . . . . . . . . . . . . . . . 2

A. West III Is Inapposite To The Facts Of This Case . . . . . . . . . . . . . . . . . . . . 4

B. Because The Contractors From Whom Gulf Acquired These Claims Could Not Bring The Claims Against The Government, Gulf's Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted . . . . . 5

II. Plaintiff Is Not Entitled To Summary Judgment In Its Favor . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . .16

# TABLE OF AUTHORITIES

## FEDERAL CASES


Admiralty Construction, Inc. v. Dalton,
156 F.3d 1217 (Fed. Cir. 1998) . . . . . . . . . . . . 4, 10

Aetna Casualty & Surety Co. v. United States,
845 F.2d 971 (Fed. Cir. 1988) . . . . . . . . . . . . . . 9, 11

Balboa Insurance Co. v. United States,
775 F.2d 1158 (Fed. Cir. 1985) . . . . . . . . . . . 13, 14

Blinderman Construction Co., Inc. v. United States,
39 Fed. Cl. 529 (1997) . . . . . . . . . . . . . . . . . . 13

Casa De Cambio ComDiv S.A. De C.V., v. United States,
291 F.3d 1356 (Fed. Cir. 2002) . . . . . . . . . . . . . . 2

Department of the Army v. Blue Fox,
525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . . . 7

Fireman's Fund Insurance Co. v. England,
313 F.3d 1344 (Fed. Cir. 2002) . . . . . . . . . . 8, 9, 10

Globe Indem. Co. v. United States,
84 Ct. Cl. 587, 595 (1937) . . . . . . . . . . . . . . . . 6

Henningsen v. United States Fidelity & Guaranty Co.,
208 U.S. 404 (1908) . . . . . . . . . . . . . . . . . . . . 7

Insurance Company of the West v. United States,
243 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . . passim

Insurance Company of the West v. United States,
55 Fed. Cl. 529 (2003) . . . . . . . . . . . . . . . . passim

Int'l Fid. Ins. Co. v. United States,
25 Cl. Ct. 469 (1992) . . . . . . . . . . . . . . . . . . 11

Pearlman v. Reliance Insurance Co.,
371 U.S. 132 (1962) . . . . . . . . . . . . . . . . . . . . 7

Prairie State Bank v. United States,
164 U.S. 227 (1896) . . . . . . . . . . . . . . . . . . . . 7

Ransom v. United States,
900 F.2d 242 (Fed. Cir. 1990) . . . . . . . . . . . . . . 13

Reliance Insurance Co. v. United States,
27 Fed. Cl. 815 (1993) . . . . . . . . . . . . . . . . . . . 3

Sentry Ins. A Mutual Co. v. United States,
12 Cl. Ct. 320 (1987) . . . . . . . . . . . . . . . . . . 6

Sun Eagle Corp. v. United States,
23 Cl. Ct. 465 (1991) . . . . . . . . . . . . . . . . . . 3

Transamerica Insurance Company v. United States,
989 F.2d 1188 (Fed. Cir. 1993) . . . . . . . . . . . . 10

Transamerica Premier Insurance Co. v. United States,
32 Fed. Cl. 308 (1994) . . . . . . . . . . . . . . . . 13

Tuftco Corp. v. United States,
222 Ct. Cl. 227, 614 F.2d 740 (1980) . . . . . . . . . . 6

United States v. Aetna Casualty & Surety Co.,
388 U.S. 366 (1949) . . . . . . . . . . . . . . . . . . 5,6

United States v. Munsey Trust Co.,
332 U.S. 234 (1947) . . . . . . . . . . . . . . . . passim

West Coast General Corp. v. Dalton,
39 F.3d 312 (Fed. Cir. 1994) . . . . . . . . . . . . . . 2

**FEDERAL STATUTES**

31 U.S.C. § 3727(a)(1), (b) . . . . . . . . . . . . . . . 6

41 U.S.C. § 15(a) . . . . . . . . . . . . . . . . . . . 6

48 C.F.R. § 28.106-7 . . . . . . . . . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GULF INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 03-626C<br>(Senior Judge Smith) |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

On August 2, 2004, Gulf Insurance Company ("Gulf" or "surety") responded to the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment in defendant's favor. In the same pleading, Gulf requested the Court to enter summary judgment in its favor. Defendant files the following response and reply and respectfully renews its request that the Court dismiss the complaint or, in the alternative, grant summary judgment to the Government upon plaintiff's complaint. In support of this response and reply, we rely upon the following brief, as well as our original motion, including the appendix attached thereto, and the joint stipulation of material facts.

ARGUMENT[1]

I. Plaintiff, Who Neither Paid To Complete The Contract Performance Nor Took Over Contract Performance, Is Not Equitably Subrogated To The Rights Of The Contractor, For Which Reason Its Complaint Fails to State A Claim Upon Which Relief Can Be Granted

In its response, plaintiff argues that "this Court's decision in [Insurance Company of the West v. United States, 55 Fed. Cl. 529 (2003)] West III is controlling of the issues" presented in this case. PlB8[2] The effect Gulf attributes to West III is incorrect. Unlike the decisions of the former Court of Claims, which are binding precedent upon this Court, Claims Court General Order No. 1 (Oct. 7, 1982), reprinted in 1 Cl. Ct. xxi, the decisions of the Court of Claims and this Court are not binding upon the Court. See Casa De Cambio ComDiv S.A. De C.V., v. United States, 291 F.3d 1356, 1364 n.1 (Fed. Cir. 2002) ("[P]rior decisions of the Court of Federal Claims ... are not binding ... on ... the Court of Federal Claims."). Accord, West Coast General Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set

---

[1]The facts supporting this reply and response are fully set forth in our original motion and in the joint stipulation of material facts filed by the parties on June 26, 2004. To the extent additional facts are necessary to respond to Gulf's cross motion for summary judgment, those facts will be set forth at the appropriate point in the argument.

[2]"PlB__" refers to the page in plaintiff's response and cross motion for summary judgment filed on August 2, 2004.

binding precedent for separate and distinct cases in that court.")

This fact is most clearly demonstrated by Reliance Insurance Co. v. United States, 27 Fed. Cl. 815 (1993). In that case plaintiff argued that despite its failure to notify the Government of the default of its bonded contractor, the Government failed in its obligation to withhold payments from the contractor. In support of its position, plaintiff pointed to two Claims Court decisions that indicated that prior notice by the surety was not a condition precedent to the Government's obligation to withhold payment to the bonded contractor.

In rejecting the surety's argument, the Reliance court clearly declared the standard that is applicable here as to the effect of West III: "[t]hese two cases, although persuasive, are not binding on this court, and certainly cannot defeat the ruling of the United States Court of Appeals for the Federal Circuit that notice by the surety is a prerequisite to the existence of a governmental duty." Id. at 827. See also, Sun Eagle Corp. v. United States, 23 Cl. Ct. 465, 473 (1991)("Claims Court decisions are not binding precedent."). Moreover, even if the Court's decision in West III were controlling as to the applicable law, it is clearly distinguishable from this case on its facts.

A. West III Is Inapposite To The Facts Of This Case

Unlike this case, where Gulf has paid solely pursuant to its payment bond, in West III the surety financed completion of the contract. West III, 55 Fed. Cl. at 540. Further, the claim pursued by the surety in West III was for losses it sustained under its performance bond. Id. at 532 n.5. Thus, unlike Gulf here, the surety in West III was subrogated to the claims of its bonded contractor because it had either taken over contract performance or had financed completion of the defaulted contract. Insurance Company of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir. 2001)("West II").

Therefore, to the extent West III is persuasive, it appears that, considering the facts of that case, the result supports the Government's position, rather than Gulf's. This follows from the Government's belief that "to maintain a claim for equitable subrogation, a surety must either take over contract performance or finance the completion of the defaulted contract under its performance bond." Admiralty Construction, Inc. v. Dalton, 156 F.3d 1217, 1222 (Fed. Cir. 1998). Nevertheless, while the result in West III may support the Government's position in this matter, we respectfully disagree with the analysis employed by the Court and believe that Gulf's reliance upon the West III analysis is misplaced.

B. Because The Contractors From Whom Gulf Acquired These Claims Could Not Bring The Claims Against The Government, Gulf's Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted

In resolving the Government's motion to dismiss Gulf's claim under RCFC 12(b)(6), the question before the Court is whether jurisdiction exists over claims by a surety, which has neither taken over performance of a contract nor financed its completion.[3] Clearly, that question requires an examination of the nature of the claims being pursued and whether sovereign immunity has been waived as to those claims. West III, 55 Fed. Cl. at 533 (citing West II, 243 F.3d at 1374-75). In United States v. Aetna Casualty & Surety Co., 388 U.S. 366 (1949), the Supreme Court considered the rights of a subrogee under the Federal Tort Claims Act. The Court framed the issue by focusing upon the rights of the subrogor to bring the action in the first place.[4] In answering that question, the Court was required to

[3]As we discussed in our Motion to Dismiss, the court of appeals concluded in Fisher v. United States, 364 F.3d 1372 (Fed Cir. 2004), that jurisdiction for purposes of RCFC 12(b)(1), is generally satisfied by a well-pled complaint invoking this Court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491. The court continued, however, that if upon further development of the case, it appeared that jurisdiction does not exist, "then the case [should be] dismissed for failure to state a claim on which relief can be granted." Fisher, at 1377. Based upon this guidance, because of the absence of jurisdiction, Gulf's claim fails to state a claim upon which relief can be granted.

[4]The Court set forth the issue as follows: "May an insurance company bring suit in its own name against the United States upon a claim to which it has been subrogated by payment to an insured

address whether such claims were barred by what is commonly referred to as the Anti-Assignment Act.[5] In brief, the Supreme Court held that because the rights of a subrogee passed by operation of law, such an assignment was not barred by the Anti-Assignment Act. 388 U.S. 374. See West II, 243 F.3d at 1374. See also West III, 55 Fed. Cl. at 533.

This conclusion necessarily limits the rights of the subrogee to those of the subrogor, which follows from the fact that the only rights or claims that the subrogor can enforce are those it receives by operation of law from the subrogee. In other words, if the subrogee could not have brought the action, then neither can the one who stands in its shoes. United States v. Munsey Trust Co., 332 U.S. 234, 242 (1947) ("[I]t is elementary that one cannot acquire by subrogation what another whose rights he claims did not have"). See also Globe Indem. Co. v. United States, 84 Ct. Cl. 587, 595 (1937) ("The party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted"); Sentry Ins. A Mutual Co. v. United States, 12 Cl. Ct. 320, 322 (1987) (surety "cannot, through subrogation, acquire

---

who would have been able to bring such an action?" 338 U.S. at 367-68 (emphasis added).

[5]That act is composed of two provisions, 41 U.S.C. § 15(a) and 31 U.S.C. § 3727(a)(1), (b). See Tuftco Corp. v. United States, 222 Ct. Cl. 277, 614 F.2d 740 (1980)(discussing the nature and differences between the two statutes).

rights not possessed by the one through whom the subrogee claims a right").

Thus, once subrogated to the rights and claims of a subcontractor or supplier, the surety can bring whatever claims the subcontractor or supplier could have brought. The questions remain, however, whether those claims can be brought in this Court and against the United States. More specifically, under the facts of this case, the defining question is whether sovereign immunity has been waived for the claims of a surety whose claims are derived solely from a subcontractor or supplier. After the Supreme Court's clarification in Dept. of the Army v. Blue Fox, 525 U.S. 255 (1999), the answer clearly is no.

In Blue Fox, the Supreme Court clarified that Prairie State Bank v. United States, 164 U.S. 227 (1896); Henningsen v. United States Fidelity & Guar. Co., 208 U.S. 404 (1908); and Pearlman v. Reliance Ins. Co., 371 U.S. 132 (1962), did not involve "question[s] of sovereign immunity." 525 U.S. at 265.[6] Therefore, the cases finding jurisdiction in this Court over equitable subrogation claims based upon the perceived waiver of sovereign immunity identified in the trilogy of Prairie State Bank, Henningsen, and Pearlman are subject to question. West II,

[6] In contrast with this declaration, the Supreme Court cited, with approval, its decision in Munsey Trust, supra, regarding the continued existence of sovereign immunity of the United States from suits by subcontractors and suppliers. Blue Fox, 525 U.S. at 265.

243 F.3d 1372.

Thus, for jurisdiction to exist in the Court of Federal Claims over equitable subrogation claims by a surety, there must be some basis upon which the surety has been subrogated to the rights of the contractor. This is because only the general contractor is in privity with the Government. Munsey Trust, 332 U.S. at 241. Therefore, the surety must undertake some act by which the general contractor's privity is passed through to it by operation of law. See Fireman's Fund Insurance Co. v. England, 313 F.3d 1344 (Fed. Cir. 2002) (acknowledging that equitable subrogation constitutes an assignment by operation of law). See also West III, 243 F.3d at 1373.

It is only through such conduct that privity exists in some fashion between the Government and the surety. In such cases, the surety is assigned by operation of law the rights and position of the contractor, so that, in effect, the surety stands in the place of the contractor. This requirement is in stark contrast to the position occupied by Gulf, who merely paid the subcontractors and suppliers pursuant to its payment bond.

This analysis is both reasonable and generally consistent with the case law. See Fireman's Fund Insurance Company, 313 F.3d at 1351 ("doctrine of equitable subrogation entitles a surety that takes over contract performance or finances completion of the defaulted contract to succeed to the

contractual rights of a contractor against the [G]overnment") (internal quotation marks omitted). That a surety should be treated differently depending upon the type of bond under which payment is made is neither novel nor unique. See Aetna Casualty & Surety Co. v. United States, 845 F.2d 971, 975 (Fed. Cir. 1988)(distinguishing a surety's right to recover funds depending upon type of bond under which payment was made).

For example, in Munsey Trust Co. v. United States, 332 U.S. 234 (1947), the Supreme Court concluded that where the surety paid subcontractors and suppliers solely under its payment bond the surety had no cause of action against the United States. Id. at 237. This conclusion follows from the fact that "[o]ne who rests on subrogation stands in the place of one whose claim he has paid...." Id. at 242.

Therefore, because the surety paid the claims of the subcontractors and suppliers, it was subrogated to those rights, which cannot be enforced against the United States. Id. at 241. Thus, where the claim paid is that of a subcontractor or supplier, subrogation will not vest the surety with rights against the Government which are enforceable in this Court.

This conclusion is consistent with the Court of Appeals for the Federal Circuit's decisions in such cases. For example, in Fireman's Fund Insurance Co. v. England, supra, the court of appeals appears to have had no difficulty concluding that

jurisdiction existed over a claim by a surety that took over contract performance or financed completion of the contract performance. Id. at 1351. The flaw in the surety's claim in Fireman's Fund was not that it failed in its claim of equitable subrogation, but rather that it chose a forum which lacked jurisdiction over such claims. See Admiralty Constr., 156 F.3d at 1221 (distinguishing between board and this Court's jurisdiction over proper equitable subrogation claims).

Further, in Transamerica Insurance Company v. United States, 989 F.2d 1188 (Fed. Cir. 1993), the court of appeals, as did this Court, found that jurisdiction existed over the equitable subrogation claims of a surety, which had paid under its performance bond to complete a project following the default of its bonded contractor. While the court of appeals reversed this Court as to the scope of the substantive right, it set forth the "general rule... that 'a surety who pays the debt of another is entitled to all of the rights of the person he paid to enforce his right to be reimbursed.'" Id. at 1194. If this is in fact "the general rule," as the Government maintains that it is, then jurisdiction based upon equitable subrogation exists only where the surety has provided benefit to the Government on behalf of the bonded contractor, as discussed in both Munsey Trust and WestII.

In view of the above, it is apparent that the analysis as to

whether jurisdiction exists over a claim brought by a surety has not changed substantially. Instead, the analysis simply requires a closer examination as to whether the surety's claim is for amounts paid solely under its payment bond, like the case here with Gulf, or whether the surety's claim is based upon taking over a contract or facilitating its completion via its performance bond.[7] In the case of the former, as with Gulf, there is no jurisdiction, because there was no jurisdiction over the identical claim had it been brought by the subcontractor from whom the surety acquired the claim.

II. Plaintiff Is Not Entitled To Summary Judgment

As the contracting officer expressly informed Gulf, GA3,[8] final completion of the contract work was the point at which the Government's role solely as a stakeholder arose.[9] The facts indicate that while substantial completion and acceptance of substantial completion may have occurred on March 22, 1999, work

---

[7]Where the surety issues both payment and performance bonds and takes over the completion of a contract, payments by the surety are considered to be under the performance bond, even if paid to subcontractors and suppliers. Aetna Casualty and Surety Co., 845 F.2d at 976.

[8]"GA__" refers to the page in the Government's Appendix, attached to our motion to dismiss or, in the alternative, for summary judgment.

[9]See Int'l Fid. Ins. Co. v. United States, 25 Cl. Ct. 469, 477 n.11 (1992)(noting that the Government is solely a stakeholder when it has "no interest in timely completion of the project").

remained to be done on the contract. GA11 In fact, the final payment voucher, which occurs at contract completion, was not transmitted to the contracting officer until September 10, 1999. GA3. Further, final payment on the contract was not certified until February 11, 2000. GA17. According to the correspondence from the attorneys then representing Gulf, it appears that the payments, about which Gulf now complains, were all made in April, 1999. GA15. Thus, it appears that, at a minimum, there is an issue as to whether the complained of payments were made before contract completion and before the Government's role solely as a stakeholder arose or after that time.

Throughout its argument, Gulf appears to assert that the Government's role solely as stakeholder arose at the time of substantial completion. See, e.g., PlB 13 ("At this juncture, the Government's interest in retaining [c]ontract funds disappeared ...."). In other words, Gulf equates substantial completion with contract completion. No support is offered by plaintiff for this proposition, which is contrary to the regulatory language governing such payments.

FAR 28.106-7, "Withholding Contract Payments," provides:

> (a) During contract performance, agencies shall not withhold payments due contractors or assignees because subcontractors or suppliers have not been paid.
>
> (b) If after completion of the contract work, the Government receives written notice from the surety regarding the contractor's failure to meet its obligations to its subcontractors or suppliers, the

contracting officer shall withhold final payment....

48 C.F.R. § 28.106-7(emphasis added).

Thus, the express regulatory language governing the contracting officer's withholding payments due to the contractor is written in terms of contract completion, not substantial completion. The cases cited by Gulf are not contrary to this position.

One such example is Transamerica Premier Insurance Co. v. United States, 32 Fed. Cl. 308 (1994). In that case, the court, in discussing the applicability of the factors set forth in Balboa Ins. Co. v. United States, 775 F.2d 1158 (Fed. Cir. 1985), concluded that the factors for determining the reasonableness of the contracting officer's release of funds only apply "before the completion of the contract." Transamerica Premier, 32 Fed. Cl. at 315. From this, it appears that Balboa, which defines the Government's obligations as a stakeholder, Ransom v. United States, 900 F.2d 242 (Fed. Cir. 1990), posits the appropriate demarcation point as "contract completion," not "substantial completion," as Gulf would have it. See Blinderman Construction Co., Inc. v. United States, 39 Fed. Cl. 529 (1997)(recognizing that "substantial completion need not, and ordinarily does not, amount to total completion"). Id., at 573 (emphasis in original).

Thus, the question becomes whether the considerations set

forth in Balboa would dictate a course of action, other than that followed by the contracting office in this case. The most telling point in the Balboa analysis is the ultimate question underlying the contracting officer's decision. The question is not whether the contractor failed to pay its subcontractors or suppliers, but whether the "contractor had the capacity and intention to complete the job." Balboa, 775 F.2d at 1164 (emphasis added)(quoting Fireman's Fund Ins. Co. v. United States, 362 F.Supp 842, 846 (D.Kan. 1973)).

In fact, even a casual review of the considerations established in Balboa clearly indicates that they are directed at whether "the contractor had the capacity and intent to complete the job[;] .... percentage of contract performance complete at time of notification by surety[;].... whether the contract was subsequently completed by the contractor[;]" and the like. Balboa, 775 F.2d at 1164-65. Even from this partial list, it is obvious that the Government's role as a stakeholder under Balboa is based upon considerations relating to whether the contractor was willing and able to complete the contract work, not whether the contractor had failed to pay its subcontractors or suppliers. To attempt to equate the Government's obligation to a non-takeover, non-completion financing surety, with the surety which pays solely pursuant to its payment bond is a misapplication of both the facts and principles of Balboa.

The rationale underlying this distinction lies in the fact that the purpose of notice is to reasonably ensure that the Government does not pay the contractor who is already in default, thereby denying the performance bond or takeover surety the funds necessary to complete the work. The default which gives rise to the Government's duty before contract completion, however, is the contractors's default on its Government contract, not default upon its contracts with its subcontractors or suppliers.

Thus, the answer here, as with the question of jurisdiction over the claims of a surety, is dependent upon the status of the surety vis-a-vis the Government contract. Once again, the focus appears to be not upon protecting the surety, but instead protecting the Government's interest in having the contract work completed.

For example, in West III the surety had financed completion of the contract. In that case, the funds sought by the surety were the funds paid to the defaulting contractor, after the surety had taken over responsibility for completing contract performance. See 55 Fed. Cl. at 531-32. Thus, unlike with Gulf, which neither took over performance of the contract nor funded its completion, the payments made to the contractor in West III, after notice by the surety, were made after the surety had, in effect, taken over performance and responsibility for contract completion. In short, the Government in West III, arguably, had

paid the wrong contractor. Clearly, that situation is markedly different than the facts and position occupied by Gulf in the instant case. This difference, in turn, should dictate a different result.

CONCLUSION

Thus, neither the facts nor the law support Gulf's request for summary judgment in its favor. For the foregoing reasons, the Government respectfully requests the Court to deny Gulf's motion for summary judgment and, instead, dismiss the complaint or, in the alternative grant summary judgment in the Government's favor.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s KATHRYN A. BLEECKER
KATHRYN A. BLEECKER
Assistant Director

/s RONALD G. MORGAN
RONALD G. MORGAN
Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6289

Attorneys for Defendant

August 20,2004

CERTIFICATE OF FILING

I hereby certify that on this 20th day of August, 2004, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT" was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s RONALD G. MORGAN

Robert G. Barbour, Esquire
WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.
7929 Westpark Drive, Suite 400
McLean, Virginia 22102